IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LANDMARK FUNDING, LLC | : | |
|     Plaintiff | : | |
| v | : | Civil Case No. L-10-1638 |
| VAN A. PERRAULT | : | |
|     Defendant | : | |
| and | : | |
| LIBERTY SURPLUS INSURANCE CORP. | : | |
|     Defendant | : | |
| | : | |

o0o
**<u>MEMORANDUM</u>**

**I.    BACKGROUND**

This is a commercial case. Plaintiff, Landmark Funding LLC ("Landmark"), is in the business of originating and selling mortgage loans. Defendant Van A. Perrault is a real estate appraiser. Defendant Liberty Surplus Insurance Corporation ("LSI") is an insurance company. Landmark alleges that Perrault negligently appraised certain property, causing Landmark to incur significant economic damages. Landmark further contends that when it filed a claim with LSI regarding the losses caused by Perrault's negligence, LSI improperly denied the claim.

On April 21, 2010, Landmark filed suit in the Circuit Court for Baltimore City. Landmark's Complaint asserts a negligence claim against Perrault and requests a declaratory judgment that the claim is covered under Perrault's policy with LSI. On June 18, 2010, LSI removed the action to this Court, and on July 1, 2010, Landmark filed the Motion to Remand

1

now pending. Docket No. 13. The Court has carefully reviewed the papers and no hearing is deemed necessary. See Local Rule 105.6 (D. Md. 2010). For the reasons stated herein, the Court will, by separate Order, GRANT the Motion and REMAND the case to the Circuit Court for Baltimore City.

**II.     LEGAL STANDARD**

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Removal of an action originally filed in state court raises significant federalism concerns, and removal jurisdiction must therefore be strictly construed. See Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994). The burden of establishing federal jurisdiction is placed upon the party seeking removal. Id.

**III.    ANALYSIS**

Landmark objects to LSI's removal on two grounds: first, that the notice of removal was untimely because it was filed more than 30 days after Perrault was served with the Complaint, and second, that LSI failed to obtain the consent of Perrault, its co-defendant, as required by 28 U.S.C. §1446. The Court addresses each contention in turn.

**a.   Timeliness of Removal**

LSI's removal is governed in part by 28 U.S.C. § 1446(b), which provides that a defendant desiring to remove a civil action must file a notice of removal within 30 days after receipt of the initial pleading setting forth the claim upon which the action is based. Despite Landmark's contention that LSI's notice of removal was filed on June 21, 2010, more than 30

days after the May 19, 2010 service of the Complaint on Perrault, the record reveals that LSI actually filed its notice of removal on June 18, 2010. Thus, LSI's notice of removal was timely.[1]

### b. Consent of all Defendants

In the typical tort suit, the injured plaintiff sues the alleged tortfeasor, and the issue of insurance coverage is left for another day. The law is clear that the tort plaintiff may also elect to sue both the alleged tortfeasor and the alleged tortfeasor's insurance carrier. In such a suit, the plaintiff seeks a liability judgment against the alleged tortfeasor. The plaintiff also seeks a declaratory judgment that the alleged tortfeasor's liability is covered by insurance. The question presented is whether, for removal purposes, the consent of both the insurance company and the tortfeasor is required. The answer, as discussed below, is yes.

The law also permits the injured plaintiff to adjudicate the issue of coverage first, leaving the question of liability for another day. In such a case, the plaintiff, while joining both the alleged tortfeasor and the insurer as defendants, seeks only a declaratory judgment that the claim is covered, leaving the issue of tort liability for another day. For removal purposes, the alleged tortfeasor is realigned as a plaintiff, meaning that the insurance company can remove without the insured's consent. The reason that consent is required in one case, but not in the other, is that the primary purpose of the two suits is different.

It is well established that the consent of all defendants is necessary to remove an action to federal court. Chaghervand v. CareFirst, 909 F. Supp. 304, 308 (D. Md. 1995). LSI argues,

---

[1] The removal statute does not speak to the situation of multiple defendants served at different times. In such a case, the first-served defendant clearly must petition for removal within 30 days, and other individual defendants have 30 days from the time they are served to join in an otherwise valid removal petition. See McKinney v. Bd. of Trustees of Md. Cmty. Coll., 955 F.2d 924, 926–27 (4th Cir. 1992). Landmark, mistaking the date of service on Perrault, cites McKinney in an effort to demonstrate that LSI's removal is untimely. McKinney addressed a situation where the first-served defendants filed a notice of removal in which later-served defendants attempted to join. It did not, however, address the case where a later-served defendant attempts to initiate the removal. Must that notice of removal be filed within 30 days after service on the first-served defendant, or does the later served defendant have 30 days after it is served to initiate the removal? Fortunately, this question need not be answered because, as discussed above, removal in this case was timely under either measure.

however, that though Perrault is nominally a defendant in this action, his consent is not required because he should properly be realigned as a plaintiff. Such realignment is proper, LSI maintains, because Perrault's interests are the same as Landmark's with respect to the primary issue in controversy, namely whether LSI owes a duty to defend and indemnify Perrault. Both Landmark and Perrault contend that LSI owes such a duty.

While realignment is most often a tool used in the context of determining whether complete diversity exists among the parties, this Court has also recognized that "parties aligned in interest with the plaintiff are not required to join or consent to the removal" of a case. Universal Concrete Products Corp. v. Peerless Ins. Co., No. CCB-08-00317, 2008 WL 4104171 at *3 n. 5 (D. Md. Aug. 21, 2008) (quoting Smilgin v. New York Life Ins. Co., 854 F. Supp. 464 (S.D. Tex. 1994)).

To properly align parties, the court must "look beyond the pleadings, and arrange the parties according to their sides in the dispute." Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69 (1941) (internal quotation omitted). In order to do so, courts in the Fourth Circuit apply the "principal purpose" test, by which they first "ascertain the 'collision of interests' from the 'principal purpose of the suit, and the primary and controlling matter in dispute'" and then "'arrange the parties according to their sides in the dispute.'" U.S. Fidelity & Guar. Co. v. A & S Mfg. Co., 48 F.3d 131, 133 (4th Cir. 1995) (quoting Chase Nat'l Bank, 314 U.S. at 69); see also Hidey v. Waste Systems Int'l, Inc., 59 F. Supp. 2d 543 (D. Md. 1999) (holding that the primary purpose test is applicable to actions removed from state court).

LSI argues that the determination of its obligation to defend and indemnify Perrault, an issue on which Perrault's and Landmark's interests coincide, is the primary purpose of the

instant suit. In support of its position, it points to the order in which the Court might determine the rights and obligations of the parties.

Under Maryland law, generally a tort plaintiff may not bring suit against a liability insurer directly until after he has obtained a judgment of liability against the insured. There is an exception, however, which allows a plaintiff to file a declaratory judgment action against the insurer when the insurance coverage issues are "separate and independent" from the tort issues. Allstate Ins. Co. v. Atwood, 319 Md. 247, 252 (1990). The reasoning behind this exception is obvious: a plaintiff may have no desire to expend funds bringing suit against an impecunious tortfeasor, against whom no real recovery would be possible. Moreover, litigating the coverage issue first also allows an insurer to determine whether it has interests it must defend in the suit adjudicating liability. An early resolution of the question, therefore, "could avoid unnecessary expense and delay to the parties." Brohawn v. Transamerica Ins. Co., 276 Md. 396, 405 (1975).

The determination of LSI's rights and obligations under Perrault's policy is undoubtedly an indispensible part of the case at bar. And LSI is correct that it is permissible, and perhaps even desirable, to resolve this issue before proceeding to the question of tort liability. This does not necessarily mean, however, that it is the primary purpose of the suit. The Plaintiff's decision to combine the issues into a single suit makes all the difference.

When a party brings a declaratory judgment action against an insurer separate and apart from the liability claim against the insured, as in the cases cited by LSI, the principle purpose is undoubtedly the determination of issues of policy coverage, notwithstanding the existence of a separate underlying dispute. For example, in Marsh v. Cincinnati Ins. Co., No. 4:08-cv-2441-RBH, 2008 WL 4614289 (D.S.C. Oct. 15, 2008), Mary and Wendy Watkins were allegedly injured when a set of wooden stairs collapsed at a beach house they were renting from Sarah

Marsh. The Watkins's filed suit against Marsh and others in state court. When the Cincinnati Insurance Company determined that the event was not covered under a policy held by Marsh, Marsh filed a second suit against the insurance company seeking a declaratory judgment that coverage existed under the policy, and naming the Watkins's as additional defendants. When the declaratory judgment action was removed to federal court, the court realigned the Watkins's as plaintiffs, because both they and Marsh advocated a finding of coverage under the policy. "The relevant inquiry is to determine the parties' positions with respect to the primary issue <u>in this case</u>, not whether the parties are adversaries in another matter pending before another court." <u>Id.</u> at *2 (emphasis in original).

In <u>U.S. Fidelity and Guaranty Co. v. A & S Manufacturing Co.</u>, the Environmental Protection Agency had, in a separate action, sued A & S for environmental contamination at the company's sites. U.S. Fidelity, the plaintiff insurer, then brought a declaratory judgment action against A & S and against the other insurers with whom A & S had contracted in order to determine each party's rights and duties as they related to A & S's claims for insurance coverage. This Court held that the "primary issue in the case was whether the insurers owe A & S a duty to defend against the underlying environmental lawsuits and a duty to indemnify for any liability assessed against A & S," and "any disputes existing among the insurers regarding contribution are ancillary to the primary issue of the duty to indemnify," and the Fourth Circuit affirmed. 48 F. 3d at 134. Since the insurance companies' interests aligned on this primary issue, they were all properly realigned as plaintiffs notwithstanding their disagreements as to contribution amongst themselves. <u>Id.</u>

By contrast, neither the parties' briefs nor the Court's own research reveal a case in which a court has realigned parties even though the question of the alleged tortfeasor's liability

was at issue in the same proceeding. To the contrary, courts seem consistently to have determined that, where the plaintiff's case includes a substantive cause of action against a defendant, that defendant should not be realigned as a plaintiff notwithstanding the fact that both plaintiff and defendant would benefit from a finding against a second defendant.

For example, in Arnold v. Sphere Drake, No. 93-1546, 1993 WL 255140 (E.D. La. June 28, 1993), the plaintiffs were a group of marine towing companies. Schade & Co., an insurance broker, procured an insurance policy from Sphere Drake Insurance PLC on the plaintiffs' behalf. Following the loss of a riverboat and the death of four crewmen, and presumably in anticipation of a lawsuit by the crewmen's families, the plaintiffs sought a declaration of coverage under the Sphere Drake policy. In case the court were to determine that there was no coverage, the plaintiffs also sought findings that Schade & Co. was liable for failure to exercise reasonable care in the procurement and brokering of the policy and that it had breached its contractual obligations as a broker. The district court refused to realign Schade & Co. as a plaintiff.

> While both plaintiffs and Schade seek to establish Sphere Drake's liability for the loss of the vessel and the four crewmen, plaintiffs also seek to establish Schade's liability. . . . Plaintiffs' attempt to establish Schade's liability is obviously adverse to Schade's interests. Therefore . . . Schade should not be realigned as a plaintiff in this case.

Id. at *4.

Similarly, in SYMS, Inc. v. Security Services, Inc., 586 F. Supp. 53 (S.D.N.Y. 1984), the plaintiff, which owned a chain of retail stores, brought suit for conversion against both IBI, an armored car service, and United Jersey Bank. Somewhere in transit to the bank, two sealed money bags entrusted to IBI by the plaintiff disappeared. IBI claimed that it had duly delivered the bags, while the bank contended that it never received them. Both the plaintiff and the bank sought to realign the parties, claiming that the actual controversy was between the co-defendants

7

as to which was responsible for the loss. The court declined, stating that "[t]he fact that one defendant may benefit should plaintiff prevail against another defendant is not in and of itself sufficient to sustain realignment." Id. at 56.

The reasoning of these cases is persuasive. Here, Landmark's primary purpose in bringing suit is to secure redress for Perrault's allegedly negligent appraisals. That it also seeks a declaration of LSI's ultimate liability for any damages caused by Perrault is of lesser importance, even though it might be advantageous to decide this second question first. The fact that Perrault would likewise benefit from a declaration that he is covered under LSI's policy is insufficient to realign him as a plaintiff in light of his live controversy with Landmark. Had either Landmark or Perrault sought a declaratory judgment against LSI in a separate action, the alignment of the parties in that action would have been determined without regard to the tort claim underlying the case presently at bar. Because both are presented together, however, the issue of tort liability must trump the issue of insurance coverage as the primary purpose of the litigation. It would, therefore, be improper to realign the parties so as to place litigants with opposite interests in the outcome of this issue on the same side of the case.

### IV. CONCLUSION

In light of the determination that Perrault is properly classified as a defendant, LSI was required to obtain his consent as a prerequisite to the removal of this case from state court. Because it failed to do so, its notice of removal is deficient. This Court accordingly lacks subject matter jurisdiction over the case, and remand is required. The Court will, therefore, by separate Order of even date, GRANT Landmark's Motion to Remand (Docket No. 13) and REMAND the case to the circuit court for Baltimore City.

Landmark has also requested that it be awarded costs and attorneys' fees incurred as a result of the removal. While § 1447(c) provides that a remand order may award such costs, an award is typically proper "only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). Though LSI's arguments ultimately failed to carry the day, the Court finds no indication that it lacked an objectively reasonable basis for the removal. The Court therefore declines to award costs and fees.

Dated this 10th day of March, 2011.

/s/
_____
Benson Everett Legg
United States District Judge